## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZEN INVESTMENTS, LLC (f/k/a Stafford Investments, LLC), JOHN STAFFORD, JR., JOHN STAFFORD, III, and CHARLESTOWN, LLC, | : : : : : : |
| Plaintiffs, | : : CIVIL ACTION NO. _____ |
| v. | : : COMPLAINT |
| UNBREAKABLE LOCK COMPANY (f/k/a Lawman Armor Company), UNBREAKABLE COMPANY (f/k/a Unbreakable Company, Inc.), UNBREAKABLE ACCESSORIES COMPANY (f/k/a Unbreakable Lock Company), ROBERT A. VITO, JOSHUA I. SMITH, SIDNEY LEVOV, HUMBERT POWELL, III, and KYLE J. CUNNINGHAM, | : : : : : : : : : : : : : JURY TRIAL DEMANDED |
| Defendants. | : : |

Plaintiffs, Zen Investments LLC, John Stafford, Jr., John Stafford, III and Charlestown, LLC (collectively, "Plaintiffs"), as and for their complaint against defendants Unbreakable Lock Company, Unbreakable Company, Unbreakable Accessories Company, Robert A. Vito, Joshua I. Smith, Sidney Levov, Humbert Powell, III and Kyle J. Cunningham (collectively, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      Plaintiffs are, and have been since 1999, minority shareholders of defendant Unbreakable Lock Company (f/k/a Lawman Armor Corporation) (the "Corporation"). Plaintiffs bring this action to enjoin what, on information and belief, Plaintiffs believe to be the imminent sale of the stock and/or assets of the Corporation by defendant Robert A. Vito ("Vito"), the Corporation's Chairman, CEO and majority, controlling shareholder.[1] The sale would cause irreparable harm to Plaintiffs, in that Defendants previously unlawfully rescinded and cancelled hundreds of thousands of shares of the Corporation's stock that had been duly issued to and held by the Plaintiffs. Thus, Plaintiffs would be deprived of their rightful share of the proceeds from the proposed sale. Further, upon information and belief, the sale will accomplish little more than satisfying the Corporation's debt, a significant amount of which is held by defendant Vito, based on a purported loan by defendant Vito to the Corporation, leaving the Corporation's other shareholders, including the Plaintiffs, with virtually no proceeds from the sale.

## Unlawful Conversion of Plaintiffs' Stock

2.      Defendants have engaged in a scheme to deprive Plaintiffs of their respective equity holdings in the Corporation. This scheme included the Corporation abruptly changing its name from Lawman Armor Corporation to Unbreakable Lock Company in or about May 2005. When Defendants finally first notified the Corporation's shareholders of this change in a November 2005 newsletter, Defendants also mailed out to the Corporation's shareholders, including the Plaintiffs, "new stock certificates" that purported to show the number of shares owned by the respective

---

[1]      Defendant Vito formerly maintained his equity position through individual holdings but subsequently transferred those holdings to a corporate shell (Defendant Unbreakable Company) that, upon information and belief, defendant Vito solely owns.

shareholders. However, the new stock certificates received by Plaintiffs "shorted" those investors of hundreds of thousands of Corporation shares that the Corporation had itself acknowledged that Plaintiffs owned.

3.      Defendants have failed and refused to issue Plaintiffs the balance of their shares under the Corporation's new name and to accurately recognize in the Corporation's records Plaintiffs' true equity holdings in the Corporation. Nevertheless, the shares that are owed to Plaintiffs are not subject to legitimate dispute, as the Corporation -- and even its legal counsel -- have previously admitted and acknowledged in writing that those shares were carried on the Corporation's books as being valid and duly issued to the Plaintiffs.

4.      Defendants' motivation in engaging in the above misconduct was to cause damage to Plaintiffs, to gain improper leverage in other legal proceedings that are currently being litigated between the parties, and to enrich themselves to the detriment of the Plaintiffs.

**The Imminent Sale of the Corporation**

5.      Recently, Plaintiffs have been advised by Defendants and their agents that Defendants have agreed to sell to a third party the stock and/or assets and/or licensed assets of the Corporation, and are in the process of working to finalize such a transaction by the end of March 2006. Therefore, the exigency of addressing Defendants' misconduct is heightened here because, without prompt Court intervention, Plaintiffs will suffer irreparable harm based on the unlawful cancellation of a significant portion of Plaintiffs' equity interests.

6.      Further, there has been a complete lack of transparency regarding the proposed sale, the entire legal basis for which is in question. The prospective purchaser, Meridian Management Group, Inc. ("Meridian"), which, upon information and belief, has ties to defendant Joshua Smith,

may not have the financial means to make the purchase and does not appear to be in the business of acquiring and operating companies.    Given that the proposed sale will solely benefit the Corporation's creditors, including defendant Vito -- in the process rendering Plaintiffs' equity interests worthless -- it appears that Meridian is merely a straw company in a transaction manufactured for defendant Vito's benefit.

       7.     Accordingly, Plaintiffs seek legal and injunctive relief to redress Defendants' unlawful and outrageous conduct alleged herein, including:

         a.     injunctive relief enjoining the impending sale of the defendant Corporation's stock and/or assets and/or the assets that are licensed to the Corporation;

         b.     a declaration as to the Plaintiffs' equity holdings and rights as minority shareholders in the Corporation;

         c.     actual, compensatory and consequential damages for the conversion of Plaintiffs' stock and other equity interests;

         d.     actual, compensatory and consequential damages for related misconduct by the Corporation's other directors and senior officers, including defendants Joshua I. Smith, Sidney Levov, Humbert Powell, III and Kyle J. Cunningham; and

         e.     punitive damages.

## PARTIES

       8.     Plaintiff Zen Investments, LLC (f/k/a Stafford Investments, LLC) ("Stafford Investments") is a limited liability company organized and existing under the laws of Illinois and having its principal place of business in Chicago, Illinois.

9.      Plaintiff John Stafford, Jr. is a citizen of Nevada; he also maintains a residence in Illinois.

10.     Plaintiff John Stafford, III is a citizen of Illinois; he also maintains a residence in Nevada.

11.     Plaintiff Charlestown, LLC is a limited liability company organized and existing under the laws of Illinois and having its principal place of business in Chicago, Illinois.

12.     Defendant Unbreakable Lock Company (f/k/a Lawman Armor Corporation) is a closely-held corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Berwyn, Pennsylvania.

13.     Defendant Unbreakable Company (f/k/a Unbreakable Company, Inc.) is a closely-held corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Berwyn, Pennsylvania. At all times relevant, the Unbreakable Company was owned and/or controlled by defendant Vito.

14.     Defendant Unbreakable Accessories Company (f/k/a Unbreakable Lock Company) is a closely-held corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has its principal place of business in Berwyn, Pennsylvania. At all times relevant, the Unbreakable Accessories Company was owned and/or controlled by defendant Vito.

15.     Defendant Vito is a citizen and resident of Pennsylvania. Defendant Vito is and was, at all times relevant, the majority shareholder, Chief Executive Officer and Chairman of the Board of Directors of the Corporation.

a.      At all times relevant, defendant Vito operated and essentially controlled the Corporation through his hand-picked and subservient management team and Board of Directors.

-5-

b.      At all times relevant, defendant Vito served as the corporate President, operated and essentially controlled the activities of defendants Unbreakable Company and Unbreakable Accessories Company. Upon information and belief, defendant Vito is the majority, if not sole, shareholder of defendants Unbreakable Company and Unbreakable Accessories Company.

c.      At all times relevant, defendant Vito controlled and owned, either directly or indirectly through defendant Unbreakable Company, a majority of the equity in defendant Unbreakable Lock Company.

16.     Defendant Joshua I. Smith ("Smith") is a citizen of the Maryland. At all times relevant, Smith was a member of the Corporation's Board of Directors. Beginning in May 2004, Smith also became a member of the Board of Directors for Sting Free Technologies Company ("Sting Free") -- a Pennsylvania corporation that along with several other related business entities are owned and/or controlled by defendant Vito. At all times relevant, Smith owned and continues to own some 25,000 shares of defendant Unbreakable Lock Company.

17.     Defendant Sidney Levov ("Levov") is a citizen of Pennsylvania. At all times relevant, Levov was a member of the Corporation's Board of Directors. At all relevant times, Levov owned and continues to own some 25,000 shares of defendant Unbreakable Lock Company.

18.     Defendant Humbert Powell, III ("Powell") is a citizen of New Jersey. At times relevant, Powell was a member of the Corporation's Board of Directors. At all relevant times, Powell and his wife, Shala Powell, owned and continue to own a total of some 108,333 shares of defendant Unbreakable Lock Company.

19.     Defendants Vito, Smith, Levov and Powell are collectively referred to as the

-6-

"Director Defendants".

20.     Defendant Kyle J. Cunningham ("Cunningham") is a citizen of Pennsylvania. At times relevant, Cunningham was the Chief Financial Officer and/or principal accounting officer of the Corporation. In that capacity, Cunningham was responsible for the accounting function of the Corporation, including but not limited to the receipt of revenues and equity, disbursements of funds and other assets, the reporting of shareholder equity, and all journal entries in the Corporation's accounting records. At all times relevant, Cunningham owned and continues to own some 150,000 options and/or warrants to purchase shares in defendant Unbreakable Lock Company.

## JURISDICTION AND VENUE

21.     This Court has diversity jurisdiction over this controversy because there is complete diversity of citizenship between the parties, and the matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332(a).

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a). Many of the acts and transactions giving rise to the violations of law complained of herein occurred in this District. In addition, several of the Defendants reside and/or have principal offices in this District.

## FACTUAL BACKGROUND

23.     Defendant Corporation was founded in or about 1997 by defendant Vito.

24.     The Corporation is engaged in the design, manufacture, marketing and distribution of anti-theft devices for automobiles, boats and personal property.

25.     In 1999, defendant Vito, who owned a majority of the Corporation's stock, raised millions of dollars in capital for the Corporation by arranging for the sale and issuance of the Corporation's stock to numerous investors, including the Plaintiffs.

26.    As part of the consideration for their initial equity investment in October 1999, Plaintiffs John Stafford, Jr. and John Stafford, III were elected to the Corporation's Board of Directors.

27.    In July 2000, defendant Vito sold some 300,000 shares of his own holdings in the Corporation's stock to plaintiff Stafford Investments for some $1,050,000.

28.    Following that July 2000 stock sale, ownership of the Corporation was split roughly in equal thirds between defendant Vito (38%), the Plaintiffs (30%) and other shareholders (32%).

29.    Between 2000 and 2002, the Corporation's financial results deteriorated, necessitating an infusion of additional capital, much of which was received in the form of loans made or guaranteed by certain of the Plaintiffs.  For example, in or about December 1999, Stafford Investments loaned the Corporation $1,000,000, and in 2001 guaranteed a $5,000,000 line of credit for the Corporation.

30.    During this same period, defendant Vito's reporting of the Corporation's financial and operational results became less and less complete.  This failure to provide timely and adequate information improperly frustrated and essentially prevented the Plaintiffs from fully understanding the reasons for the Corporation's decline.

31.    In December 2002, defendant Vito convened a shareholders meeting without notifying the Plaintiffs.  At that meeting, without any other shareholders or directors present, Vito unilaterally reduced the number of directors.  In doing so, Vito removed plaintiffs John Stafford, Jr. and John Stafford, III from their positions as directors of the Corporation.

32.    Following the dismissal of John Stafford, Jr. and John Stafford, III from the Board of Directors, the Corporation continued to reportedly suffer losses and experience poor financial

-8-

performance.

33.     Moreover, beginning in December 2002 and continuing to the present, defendant Vito and the other Defendants have engaged in a course of conduct that has unlawfully and forcibly diluted and reduced the Plaintiffs' shares in the Corporation's ownership -- while simultaneously increasing defendant Vito's relative own ownership interests -- which has occurred without notice or any consideration to the Plaintiffs.

### Defendants' Unlawful Conversion of Plaintiffs' Equity

34.     When Plaintiffs invested in the Corporation in 1999 and 2000, the Corporation collectively issued Plaintiffs 1,264,297 shares of common stock, and granted Plaintiff 1,164,297 options and/or warrants ("Warrants") to purchase additional shares.  The exercise price of the Warrants ranged from $1.00 per share to $4.20 per share.  Attached as Exhibit "A" is a true and correct copy of one of the Warrants to Purchase Shares.

35.     On January 26, 2001, defendant Vito, on behalf of the Corporation, agreed in writing to re-price for the Plaintiffs these Warrants to $0.01 per share, in exchange for Stafford Investments' promise to either make a $5 million line of credit available to the Corporation directly or to guarantee such a line of credit through a commercial bank.  Attached as Exhibit "B" is a true and correct copy of the foregoing letter agreement (the "January 2001 Letter Agreement").

36.     On March 21, 2001, two months after the execution of the January 2001 Letter Agreement, the Corporation's Board of Directors ratified the January 2001 Letter Agreement.  Attached as Exhibit "C" is a true and correct copy of the foregoing Minutes of the Board of Directors.

37.     On May 8, 2001, defendant Vito, on behalf of the Corporation, acknowledged and

agreed that a certain $5 million line of credit provided by LaSalle Bank satisfied the obligations of Stafford Investments under the January 2001 Letter Agreement. Attached as Exhibit "D" is a true and correct copy of the letter acknowledged by defendant Vito on behalf of the Corporation (the "May 2001 Acknowledgment").

38.    On October 6, 2002, defendant Vito, on behalf of the Corporation, again acknowledged by way of a letter agreement that the LaSalle Bank line of credit satisfied Stafford Investments' obligations under the January 2001 Letter Agreement and that the Warrants granted to the Plaintiffs would therefore be exercisable at $0.01 per share. Attached as Exhibit "E" is a true and correct copy of the letter acknowledged by defendant Vito on behalf of the Corporation (the "October 2002 Acknowledgment").

39.    On January 27, 2003, Plaintiffs exercised the Warrants on 1,164,297 shares at $0.01 per share. After receiving payment in full from the Plaintiffs, the Corporation duly issued share certificates to the Plaintiffs evidencing the transaction. Attached as Exhibit "F" is a true and correct copy of the stock certificates.

40.    In June 2003, Moore Stephens, P.C. ("Moore Stephens"), an accounting firm, prepared and issued on behalf of the Corporation a report that included audited financial statements of the Corporation for the fiscal years 2002 and 2001 (the "2003 Moore Stephens Report"). In that report, Moore Stephens indicated that in April 2003 the Corporation's Board of Directors had "approved the rescission of a repricing agreement" in connection with the January 2001 Letter Agreement between the Corporation and plaintiff Stafford Investments. Attached as Exhibit "G" is a true and correct copy of the 2003 Moore Stephens Financial Report (*see* pp. 8, 12).

41.    Subsequent to the issuance of the 2003 Moore Stephens Financial Report, Plaintiffs

-10-

became aware of that report and the statement that the Board had purportedly rescinded, after the fact, the repricing of Plaintiffs' Warrants, which Plaintiffs had already exercised and in connection with which they had been issued shares of the Corporations' stock.

42.      In or about the summer of 2004, Plaintiffs contacted the Corporation to question the accuracy and the basis of the representations made in the 2003 Moore Stephens Financial Report.

43.      After not receiving an adequate and timely response from the Corporation as to the Corporation's treatment of their share holdings, Plaintiffs commenced an action on July 14, 2004 against the Corporation in the Court of Common Pleas in Chester County, Pennsylvania, styled *Zen Investments LLC, et al. v. Lawman Armor Corp.*, C.A. No. 04-05557 (the "Declaratory Action"). That Declaratory Action sought a declaration that the Warrants had been properly exercised by the Plaintiffs, that the appropriate consideration was received by the Corporation and that valid share certificates had in fact been issued by the Corporation to the Plaintiffs, all reflecting Plaintiffs' valid exercise of the Warrants at the agreed price of $0.01 per share.

44.      On July 29, 2004, before the Corporation filed its Answer in the Declaratory Action, the Corporation's Chief Financial Officer, Kyle Cunningham, acknowledged in a letter to Plaintiffs' counsel that in fact the Warrants had not been rescinded, that a proper exercise of the Warrants had occurred and that valid shares had previously been duly issued to the Plaintiffs.   Indeed, Mr. Cunningham stated his letter response was being sent "at the direction of Lawman's counsel, Carl G. Roberts [of Ballard Spahr Andrews & Ingersoll, LLP in Philadelphia], to confirm the status of the shares of Lawman Armor Corporation acquired by the Stafford interests upon the exercise of their repriced warrants."   Moreover, the letter specifically stated that (emphasis added):

> ***All of the shares acquired upon the exercise of repriced warrants on***

> *or about January 28, 2003 by the Staffords are carried on*
> *Lawman's books as being valid and issued to the Staffords.*

Attached as Exhibit "H" is a true and correct of the letter from Kyle Cunningham, dated July 29, 2004 (the "July 2004 Acknowledgment"). On the basis of the acknowledgment and representation of the Corporation, Plaintiffs voluntarily dismissed without prejudice the Declaratory Action.

45.     However, thereafter, on September 9, 2005, defendant Vito directed that a legal action be filed on behalf of Unbreakable Lock Company against the Plaintiffs (and a related entity). That action alleged that, notwithstanding the Corporation's prior acknowledgment and representation, Plaintiffs had allegedly failed to provide the Corporation with that certain $5 million line of credit and thus had breached the January 2001 Letter Agreement. Not surprisingly, Unbreakable Lock Company's pleading did not include any acknowledgment of the May 2001 Acknowledgment or the October 2002 Acknowledgment, both of which acknowledged and represented that Plaintiffs had met their obligations under the January 2001 Letter Agreement based on the $5 million guaranteed line of credit provided through LaSalle Bank. This action was filed in federal Court in the Eastern District of Pennsylvania styled as *Unbreakable Lock Company v. John S. Stafford, III, John S. Stafford, Jr., Stafford Trading, Inc., Stafford Investments, LLC and Charlestown, LLC*, C.A. No. 05-cv-04835-CG (the "Unbreakable Action"). Defendants in the Unbreakable Action have filed a motion to dismiss, which is pending. The instant action is a related action to the Unbreakable Action.

46.     Upon information and belief, the Unbreakable Action was commenced with the knowledge, approval and cooperation of defendants Smith, Levov and Powell. Morever, in participating in this scheme to rescind and convert Plaintiffs' stock and ratify the institution of the

-12-

Unbreakable Action, defendants Vito, Smith, Levov and Powell acted in a manner that was not in the interests of the Corporation, in order to intentionally and wrongfully harm the shareholder Plaintiffs.

47.     On November 11, 2005, defendant Vito, on behalf of the Corporation, distributed to Plaintiffs and other shareholders a "2004 Financials and Shareholder Update" for the Corporation, which included a "Stock Capitalization Table," purporting to list the shares held by each of the Corporation's shareholders. Along with this "Shareholder Update", Plaintiffs also received new share certificates issued under the Corporation's new name, Unbreakable Lock Company. However, the number of shares identified in the stock capitalization table and the number of shares issued under the new stock certificates did not include *1,164,297 shares of the Corporation's stock* that the Corporation had previously issued and that the Plaintiffs currently held, and which the Corporation previously had acknowledged, although no explanation for these discrepancies was provided. Attached as Exhibit "I" is a true and correct copy of the Corporation's purported 2004 Financials and Shareholder Update.

48.     On or about January 30, 2006, David W. Lobdell, Esquire, on behalf of the Plaintiffs, forwarded a letter to the Corporation acknowledging receipt of the "2004 Financials and Shareholders Update" and requesting that the Corporation's capitalization table therein be corrected to accurately reflect the Plaintiffs' respective equity ownership interests. Mr. Lobdell's letter also requested that the Corporation issue such additional share certificates to Plaintiffs as would accurately reflect the Plaintiffs' true and correct share ownership in the Corporation. Attached is Exhibit "J" is a true and correct copy of Mr. Lobdell's letter.

49.     By letter dated February 6, 2006, Kevin Gibson, Esquire, counsel for defendant Vito

-13-

and the Corporation, advised that he had been retained to represent defendant Vito and the Corporation. Mr. Gibson's letter informed Plaintiffs that defendant Vito, on behalf of himself and the Corporation, was refusing to provide Plaintiffs with the share certificates as requested, and the letter further stated, in pertinent part, that "[i]n a nutshell Mr. Vito will not be forwarding any new shares of stock as you demand in your letter." Attached as Exhibit "K" is a true and correct copy of the foregoing letter.

50.     Upon information and belief, the Corporation's March 2005 name change was part of a scheme to improperly convert Plaintiffs' equity holdings in the Corporation. That scheme was orchestrated and executed by defendant Vito, with the knowledge, approval and assistance of defendants Smith, Levov, Powell and Cunningham. Morever, in participating in this scheme defendants Vito, Smith, Levov, Powell and Cunningham in a manner that was not in the interests of the Corporation, in order to intentionally and wrongfully harm the shareholder Plaintiffs in order to advance their own personal interests. Alternatively, defendants Smith, Levov, Powell and Cunningham failed to properly exercise and discharge their duties owed to the Corporation and to Plaintiffs as shareholders of the Corporation.

51.     Among other things, Defendants' motivation in engaging in the above misconduct was primarily aimed at causing damage to Plaintiffs, gaining improper leverage in other legal proceedings that are currently being litigated between the parties, and to enrich themselves to the detriment of Plaintiffs.

52.     Through the acts and conduct complained of herein, defendant Vito has increased his equity stake in the Corporation (now held through defendant Unbreakable Company). Together with the unlawful cancellation of hundreds of thousands of shares held by Plaintiffs, Defendants' conduct

-14-

has resulted in a dramatic shift in the reported equity of the Corporation, as reflected in the following table:

| Date | Robert Vito and his Unbreakable Company | The Plaintiffs | Other Shareholders |
|------|------------------------------------------|----------------|---------------------|
| December 2002 | 3,169,595 (38%) | 2,248,594 (29%) | 2,756,446 (33%) |
| December 2003 | 6,902,598 (53%) | 2,248,594 (19%) | 3,601,446 (28%) |
| September 2005 | 9,632,598 (70%) | 1,264,297 (9%) | 2,845,374 (21%). |

## Defendants' Imminent Sale of the Corporation

53.     In the Corporation's "2004 Financials and Shareholder Update" sent to shareholders in November 2005, defendant Vito stated that:

> The Company has been approached by parties interested in purchasing the Company. I am not at liberty to disclose the terms at this time. However, if the deal is consummated under the proposed terms I believe there will be significant value for the shareholders.

*See* Exhibit "I".

54.     Upon information and belief, defendant Vito and the other Director Defendants have received since November 2005 a letter of intent from a third party buyer to purchase all or part of the stock and/or the assets of the Corporation.

55.     Upon information and belief, the prospective buyer is Meridian Management Group, Inc., a Maryland corporation with principal offices at 826 East Baltimore Street, Baltimore, Maryland. Meridian purports to be a "professional asset manager for economic development and private equity funds". It does not appear as if Meridian is in the business of acquiring and operating

companies.

56.     Given that Meridian, which, upon information and belief, has ties to defendant Joshua Smith, may not have the financial means to make the purchase, Meridian may instead be serving as a straw company in this transaction to arrange a transaction favorable to defendant Vito.  Upon information and belief, such a sale would effectively benefit only the Corporation's creditors, including defendant Vito, rendering Plaintiffs' equity interest worthless.  Upon information and belief, the Corporation's outstanding debt to shareholders, more than $1 million of which purportedly is owed to defendant Vito (*i.e.*, Unbreakable Company) (*see* Exhibit "I", financial statements under Long-Term Liabilities), would be paid first from the proceeds of the proposed sale, which proceeds in total would not satisfy much more than the outstanding debt to the Corporation's creditors, leaving Plaintiffs' equity investment worthless.  Accordingly, Plaintiffs should be afforded the opportunity to investigate the sale and the Corporation should first be required to issue Plaintiffs share certificates reflecting their actual ownership of shares in the Company before any such sale is consummated.

57.     Further, should the proposed Meridian transaction be an asset or licensed asset sale, again, defendant Vito would be the primary beneficiary given that the Corporation's primary assets consists of patents on the design of one or more anti-theft devices.  Upon information and belief, the patents at issue are licensed to the Corporation but owned by defendant Vito and/or Unbreakable Company and/or Unbreakable Accessories Company.

-16-

## CLAIMS FOR RELIEF

### First Claim for Relief

### (Petition for Preliminary and Permanent Injunction)

58.     Plaintiffs reallege each of the foregoing allegations as if fully set forth here.

59.     Since at least November 2005, Defendants failed and refused to acknowledge, and have misrepresented, Plaintiffs' true equity interests in the Corporation. Indeed, Defendants' have purported to cancel valid shares of the Corporation that were duly issued to and held by Plaintiffs. Upon information and belief, the misrepresentations and omissions as alleged herein concerning the equity holdings of the Plaintiffs and other shareholders has been provided to the third parties engaged in a purchase of the stock and/or assets and/or licensed assets of the Corporation, including but not limited to Meridian.

60.     The sale of the stock and/or assets and/or licensed assets of the Corporation without a prior determination and declaration of the Plaintiffs' actual ownership interests in the Corporation will cause irreparable harm inasmuch as the current stock capitalization table shows the Plaintiffs owning much less than one-half of the equity interests that they actually own.

61.     The sale of all or substantially all the assets and/or licensed assets of the Corporation, or the sale of all or a majority of its stock, will also result in the loss of any chance to recoup the opportunity to successfully manage and grow the business, heretofore wasted by defendant Vito and the other Director Defendants.

62.     The pending sale of the Corporation's stock and/or assets, if permitted to proceed, will result in irreparable harm to Plaintiffs because it will deprive the Plaintiffs of any opportunity

-17-

to seek redress for the wrongs done to them by the unlawful, oppressive and fundamentally unfair activities of the Defendants. Further, the proposed sale to Meridian will benefit defendant Vito to the detriment of other shareholders, including the Plaintiffs, thereby rewarding the controlling, shareholder for his oppressive conduct.

63.     The Plaintiffs have no adequate remedy at law.

Wherefore, Plaintiffs demand that the Court adjudge that Defendants be enjoined from completing the sale of the Corporation's stock and/or assets and/or licensed assets until such time as the various ownership interests of the Corporation shareholders, included the Plaintiffs, is finally determined and Plaintiffs have been afforded the opportunity to investigate the propriety of the planned sale.

### Second Claim for Relief

**(Petition for Declaratory Relief
under 28 U.S.C. § 2201)**

64.     Plaintiffs reallege each of the foregoing allegations as if fully set forth here.

65.     In 1999, plaintiff Stafford Investments acquired 635,715 shares of the Corporation's common stock and Warrants to purchase an additional 535,715 shares of stock.

66.     In 1999, plaintiff John Stafford, Jr. acquired 25,000 shares of the Corporation's common stock and Warrants to purchase an additional 25,000 shares of stock.

67.     In 1999, plaintiff John Stafford, III acquired 89,286 shares of the Corporation's common stock and Warrants to purchase an additional 89,286 shares.

68.     In 1999, plaintiff Charlestown, LLC acquired 514,296 shares of the Corporation's common stock and Warrants to purchase an additional 514,296 shares.

69      On or about September 23, 2002, the Director Defendants voted to re-price Plaintiffs' Warrants for the purchase of 1,253,157[2] shares to $0.01 per share, and authorized defendant Vito, as Chief Executive Officer of the Corporation, to execute all documents and other agreements in connection therewith. A true and correct copy of the Minutes of the Board Meeting of September 23, 2002 is attached hereto and marked Exhibit "L".

70.     On or about September 27, 2002, the Corporation, acting by and through defendant Vito, advised John S. Stafford, Jr. the Warrants for 1,253,157 shares were to be re-priced to a purchase price of $0.01 per share. Attached is Exhibit "M" is a copy of the letter of defendant Vito dated September 27, 2002.

71.     The foregoing stock ownership and warrants to purchase additional stock were and are reflected on the Corporation's stock capitalization table as of December 1, 2002. Attached as Exhibit "N" is a true and correct a copy of the Stock Capitalization Table of December 1, 2002.

72.     On or about January 27, 2003, plaintiff Stafford Investments LLC forwarded to the Corporation a Notice of Exercise for 535,715 shares at $0.01 per share together with the purchase price of $5,357.15. Attached as Exhibit "O" is a copy of the foregoing Notice of Exercise, together with a copy of the check.

73.     On or about January 27, 2003, plaintiff John Stafford, Jr. forwarded to the Corporation a Notice of Exercise for 25,000 shares at $0.01 per share together with the purchase price of $250.00. Attached as Exhibit "P" is a copy of the foregoing Notice of Exercise, together with a copy of the check.

---

[2]      The vote of the Board of Directors to reprice warrants to purchase 1,253,157 shares included the 1,164,297 shares which forms part of this claim for relief.

-19-

74.    On or about January 27, 2003, plaintiff John Stafford, III forwarded to the Corporation a Notice of Exercise for 89,286 shares at $0.01 per share together with purchase price of $892.86. Attached as Exhibit "Q" is a copy of the foregoing Notice of Exercise, together with a copy of the check.

75.    On or about January 27, 2003, plaintiff Charlestown, LLC forwarded to the Corporation a Notice of Exercise for 514,296 shares at $0.01 per share together with purchase price of $5,142.96. Attached as Exhibit "R" is a copy of the foregoing Notice of Exercise, together with a copy of the check.

76.    Plaintiffs' checks, representing consideration for exercise of the above Warrants and the issuance of the shares of stock, were accepted by the Corporation and deposited in the Corporation's bank account.

77.    On January 27, 2003, the Corporation issued Certificate No. C141 signed by defendant Vito, as President and signed by defendant Levov, as Acting Secretary and Member of the Board of Directors, to Stafford Investments, LLC, evidencing ownership of 535,715 shares of stock representing those shares purchased through the exercise of the aforementioned Warrants. Attached as Exhibit "F".

78.    On January 27, 2003, the Corporation issued Certificate No. C135 signed by both defendant Vito, as President, and by defendant Levov, as Acting Secretary and a Member of the Board of Directors, to John Stafford, Jr. evidencing ownership of 25,000 shares of stock representing those shares purchased through the exercise of the aforementioned Warrant. Attached as Exhibit "F".

79.    On January 27, 2003, the Corporation issued Certificate No. C131 signed by both defendant Vito, as President and by defendant Levov, Acting Secretary and Member of the Board of

Directors, to John Stafford, III evidencing ownership of 89,286 shares of stock representing those shares purchased through the exercise of the aforementioned Warrant. Attached as Exhibit "F".

80.     On January 27, 2003, the Corporation issued Certificate No. C134 signed by both defendant Vito, as President and by defendant Levov, Acting Secretary and Member of the Board of Directors, to Charlestown, LLC evidencing ownership of 514,296 shares of stock representing those shares purchased through the exercise of the aforementioned Warrant. Attached as Exhibit "F".

81.     On or about December 31, 2003, the Corporation issued a Fully Diluted Stock and Options Schedule. Attached as Exhibit "S" is a copy of the purported Schedule of December 31, 2003 reflecting:

      a.     Plaintiff Stafford Investments owning 1,171,430 shares of stock, with no outstanding warrants or options.

      b.     Plaintiff John Stafford, Jr. as owning 50,000 shares of stock, with no outstanding warrants or options.

      c.     Plaintiff John Stafford, III as owning 178,572 shares of stock, with no outstanding warrants or options.

      d.     Plaintiff Charlestown, LLC as owning 1,028,592 shares of stock, with no outstanding warrants or options.

82.     As of December 31, 2003, Plaintiffs herein reasonably relied upon the foregoing documents as proof of ownership of the aforesaid shares of stock in the Corporation.

83.     Upon receipt of the 2004 Financials and Shareholder Update (Exhibit "I") together with the September 2005 capitalization table, it became apparent that the Corporation had improperly revised its stock capitalization table to exclude or otherwise improperly reflect the actual equity

ownership of the Plaintiffs herein.

84.     Following Plaintiffs' questioning of the actions of the Corporation, on February 6, 2006, Kevin Gibson, Esquire, counsel for defendant Vito and the Corporation, advised that neither defendant Vito nor the Corporation would provide Plaintiffs with the share certificates as requested, stating in pertinent part, that "[i]n a nutshell Mr. Vito will not be forwarding any new shares of stock as you demand in your letter." *See* Exhibit "K".

Wherefore, Plaintiffs demand that the Court adjudge:

a.     That the Warrants Plaintiffs exercised on January 23, 2003 for 1,164,297 shares were validly issued and exercised at $0.01 per share;

b.     That the shares of stock represented by the Warrants were validly issued to Plaintiffs and outstanding as of January 23, 2003; and

c.     That the Plaintiffs recover their costs.

### Third Claim For Relief

#### (Against Defendant Vito for Breach of Fiduciary Duty by the Controlling Shareholder)

85.     Plaintiffs reallege each of the foregoing allegations as if fully set forth here.

86.     This claim is brought by Plaintiffs against defendant Vito for breach of fiduciary duty by the controlling shareholding under common law.

87.     As the controlling shareholder of the Corporation, defendant Vito owed strict fiduciary duties to the Corporation's minority shareholders, including the Plaintiffs.

88.     As the controlling shareholder, defendant Vito was required to act at all times honestly and in good faith with a view to the best interests of the Plaintiffs, and to prevent himself from using

-22-

his power in such a way as to exclude the Plaintiffs from their proper share of the benefits of the Corporation, and to prevent himself from freezing out Plaintiffs for the purpose of continuing the business for his own benefit.

89.     As the controlling shareholder, defendant Vito failed to fulfill his obligations to the Plaintiffs and breached his duty to them by inducing the other Director Defendants to take action to purportedly cancel valid shares of the Corporation's stock that had been duly issued to the Plaintiffs.

90.     As a direct result of the controlling shareholder defendant Vito's breaches of his fiduciary duties alleged above, the Plaintiffs have been damaged in an amount to be determined at trial.

91.     Defendant Vito has acted wilfully, maliciously, outrageously, in bad faith and with reckless indifference to the interests of the Plaintiffs by engineering the purported cancellations of Plaintiffs' equity holdings in the Corporation's stock as alleged above.

Wherefore Plaintiffs demand judgment against defendant Vito in an amount in excess of $150,000, with interest and costs.

### **Fourth Claim For Relief**

### **(Against Defendants Vito and Unbreakable Lock Company for Conversion)**

92.     Plaintiffs reallege each of the foregoing allegations as if fully set forth here.

93.     This claim is brought by Plaintiffs against defendants Vito and Unbreakable Lock Company for conversion under common law.

94.     As alleged more fully above, defendants Vito and Unbreakable Lock Company wrongfully acted to purportedly cancel valid shares of the Corporation's stock that had been duly

issued to Plaintiffs through a scheme that involved changing the name of the Corporation in order to issue "new," and inaccurate, stock certificates to Plaintiffs.

95.     Plaintiffs have requested that defendant Vito and Unbreakable Lock Company issue to Plaintiffs forthwith certificates for the actual number of shares of the Corporations' stock that are owned by the Plaintiffs.

96.     Through the assistance and approval of the Director Defendants and defendant Cunningham, defendant Vito has refused to issue Plaintiffs their shares and has directed that Unbreakable Lock Company not issue those shares.

97.     In doing so, defendant Vito acted outside of his corporate capacity and was not acting in the interests of the Corporation.

98.     The above actions of defendants Vito and Unbreakable Lock Company have deprived Plaintiffs' their rightful possession of their property, and has been done without the Plaintiffs' consent and without lawful justification.

99.     Defendant Vito has acted wilfully, maliciously, outrageously, in bad faith and with reckless indifference to the interests of the Plaintiffs by engineering the conversion of Plaintiffs' equity holdings in the Corporation's stock as alleged above.

Wherefore, Plaintiffs demand judgment against defendants Vito and Unbreakable Lock Company in an amount in excess of $150,000 with interest and costs.

### **Fifth Claim for Relief**

#### **(Against the Director Defendants and Defendant Cunningham for Aiding and Abetting Conversion)**

100.     Plaintiffs reallege each of the foregoing allegations as if fully set forth here.

101.    This claim is brought by Plaintiffs against defendants Vito, Smith, Levov, Powell, and Cunningham for aiding and abetting conversion under common law.

102.    Defendants Smith, Levov, Powell and Cunningham acted in concert with defendant Vito and the Corporation pursuant to a common design with him to convert Plaintiffs' stock, as alleged more fully above.

103.    In doing so, defendants Smith, Levov, Powell and Cunningham acted outside of their corporate capacities and were not acting in the interests of the Corporation.

104.    The Defendant Directors and Cunningham acted wilfully, maliciously, outrageously, in bad faith and with reckless indifference to the interests of the Plaintiffs by engineering the purported cancellations of Plaintiffs' equity holdings in the Corporation's stock as alleged above.

Wherefore, Plaintiffs demand judgment against defendants Vito, Smith, Levov, Powell, and Cunningham in an amount in excess of $150,000 with interest and costs.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

a.    that judgment be entered as to the equitable and other relief requested herein, including a preliminary and permanent injunction, the appointment of a custodian, an Order enjoining the Corporation from entering into any agreement to sell or otherwise dispose of assets, licensed assets and/or the stock of the Corporation, and an award of money damages and punitive damages;

b.    that judgment be entered against each of the Defendants, jointly and severally, determining that each has committed the violations of law as alleged in this Complaint;

c.    that Defendants, jointly and severally, be ordered to pay Plaintiffs compensatory, consequential, incidental and punitive damages to the full extent legally available, in an amount to

be determined at trial;

      d.      that Defendants pay Plaintiffs pre-judgment and post-judgment interest, as well as costs and reasonable attorneys' fees, expert witness fees, and other costs as and to the extent permitted by law; and

      e.      that Plaintiffs be awarded such other or different relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury on all issues so triable.

Dated: March 14, 2006

GALLAGHER, ROWAN & EGBERT, P.C.

James Egbert /signed with permission by Kevin M Dirker

James E. Egbert (PA Atty. ID #46389)
1500 Walnut Street, Suite 1600
Philadelphia, PA  19102
Telephone: (215) 732-8900
Fax: (215) 732-8999

BERGER & MONTAGUE, P.C.

Merrill G. Davidoff (PA Atty. ID #17729)
Lane L. Vines (PA Atty. ID # 80854)
Ellen T. Noteware (PA Atty. ID #82711)
1622 Locust Street
Philadelphia, PA  19103-6305
Telephone:  (215) 875-3000
Fax:  (215) 875-4604

*Attorneys for Plaintiffs Zen Investments LLC,
John Stafford, Jr. and John Stafford, III*

DUANE MORRIS LLP

John J. Soroko (PA Atty. ID #25987)
30 South 17th Street
Philadelphia, PA 19103-4196
Telephone: (215) 979-1124
Fax:  (215) 979-1020

*Attorneys for Plaintiff Charlestown, LLC*

## CERTIFICATE OF SERVICE

I certify that I caused a copy of Plaintiffs' Complaint to be served on the following persons in the manner indicated below:

### *Via Hand Delivery and Electronic Mail:*

Kevin William Gibson, Esq.
**Gibson & Perkins, P.C.**
200 East State Street, Suite 105
Media, PA 19063
Telephone: (610) 565-1708
E-Mail: kevingibson@gibperk.com

*Counsel for Defendants*

Carl G. Roberts, Esq.
**Ballard Spahr Andrews & Ingersoll, LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: (215) 864-8120
E-Mail: cgroberts@ballardspahr.com

*Counsel for Defendants*

### *Via Hand Delivery:*

Unbreakable Lock Company
Unbreakable Company
Unbreakable Accessories Company
Robert A. Vito
Joshua I. Smith
Sidney Levov
Humbert Powell, III
Kyle J. Cunningham
1434 Sugartown Road
Berwyn, PA 19312
Telephone: (610) 296-1944

*Defendants*

Dated: March 14, 2006

_____
Lane L. Vines

## VERIFICATION

I, John Stafford, III, in my capacity as the manager of Zen Investments, LLC, do hereby affirm, subject to the penalties relating to unsworn falsifications to authorities, that: Zen Investments, LLC is one of the named plaintiffs in the foregoing Complaint; that the statements and facts set forth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief; and that I am authorized to make this Verification on behalf of Zen Investments, LLC.

Dated: 3/14/06

_____
John Stafford, III
On behalf of Zen Investments, LLC

## VERIFICATION

I, John Stafford, Jr., d i hereby affirm, subject to the penalties relating to unsworn falsifications to authorities, that: I am one of the named plaintiffs in the foregoing Complaint; and that the statements and facts set orth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

Dated: 3/14/06

_____
John Stafford, Jr.

## VERIFICATION

I, John Stafford, III, d> hereby affirm, subject to the penalties relating to unsworn falsifications to authorities, that I am one of the named plaintiffs in the foregoing Complaint; and that the statements and facts set orth in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

Dated: 3/14/06

_____
John Stafford, III

## VERIFICATION

I, John Stafford, III, in r y capacity as the manager of Charlestown, LLC, do hereby affirm, subject to the penalties relating o unsworn falsifications to authorities, that: Charlestown, LLC is one of the named plaintiffs in th : foregoing Complaint; that the statements and facts set forth in the foregoing Complaint are true an 1 correct to the best of my knowledge, information and belief; and that I am authorized to make th : Verification on behalf of Charlestown, LLC.

Dated:  3/14/06

_____

John Stafford, III,
On behalf of Charlestown, LLC